WILLIAM B. GREENOUGH, ATTORNEY–GENERAL, EX REL., vs.
BOARD OF POLICE COMMISSIONERS OF THE TOWN OF
TIVERTON.

DECEMBER 31, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Domestic Corporations are Resident Citizens.   Intoxicating Liquors.*

Corporations created by the General Assembly for the purpose of conducting
the liquor business are " citizens resident within this state " for the purposes
set forth in Gen. Laws, cap. 102, § 2, providing that licenses for the manu-
facture or sale of pure spirituous and intoxicating liquors "may be granted
to citizens resident within this state."

(2)   *Corporations.   Judicial Notice.   Construction of Statutes.*

The court will take notice of acts of incorporation for the purposes of con-
struction.

(3)   *Legislative Construction.*

If the General Assembly has created corporations for the express purpose of
doing business that can only be done by resident citizens, such fact furnishes
conclusive evidence of legislative construction, for it is not to be presumed
that the legislature acted abortively.

(4)   *Business Corporations.   Intoxicating Liquors.*

A corporation organized to engage in the business of manufacturing, buying,
selling, etc., intoxicating liquors, is a business corporation within the pro-
visions of Gen. Laws, cap. 176.

(5)   *Residence of Corporation.*

The residence of a corporation is created for it by law, and is the state which
created it, and cannot be changed by act of the corporation.

CERTIORARI.   Heard, and petition denied.

DUBOIS, C. J.   This is a petition for a writ of *certiorari*
brought by the attorney-general of the State, at the relation of
certain citizens and taxpayers of the town of Tiverton, in said
State, and for and on behalf of the inhabitants of said town,
against Henry C. Wilcox, Richard Boardman, and Harry W.
Grinnell, all of said town of Tiverton, and who are the board of
police commissioners of said town of Tiverton, setting forth:
" 1.   That under the provisions of Section 2 of Chapter 102 of
the General Laws of the State of Rhode Island and the amend-

ments thereof, it is provided that 'the town councils of the several towns and boards of commissioners as hereinafter provided may grant or refuse to grant licenses to such citizens resident within this state for the manufacture or sale of pure, spirituous and intoxicating liquors within the limits of said town and city as they may deem proper' and by Chapter 1034, Section 5, of the Public Laws it is provided that 'Said Board shall also have and exercise within and for said town all the power and authority vested in and conferred upon the town council of said town by the provisions of Chapter 102 of the General Laws and all acts in amendment thereof or in addition thereto,' whereby said Board of Police Commissioners of the Town of Tiverton were authorized to grant such licenses and from time to time exercise said power under the provisions aforesaid.

"2.   That on, to wit, the 1st day of May, A. D. 1909, said Board of Police Commissioners transferred a certain retail license to sell pure, spirituous, malt and intoxicating liquors, which had been before that time issued and granted to John J. Keams, at 87 Main Street to Nos. 5 and 7 Bay Street in said Town of Tiverton, to the Union Wine Company, a corporation, and at the same time changed said license from a retail to a wholesale license, by a statement to that effect on the face thereof.

"3.   That said Union Wine Company was at the time of the transfer of said license a corporation and was not a citizen of the State of Rhode Island at the time of the granting of said license and that under the provisions of law above cited a license to sell such liquors could not legally be granted to any corporation inasmuch as a corporation is not and cannot be a citizen of this State within the true intent and meaning of said provisions and others relating to the same subject matter.

"4.   That from and after the transfer of said license to said corporation said corporation has sold malt and spirituous liquors at the place designated in said license and is now selling such liquors at said place.

"Wherefore, inasmuch as there is no other adequate remedy for correcting the said illegal action of said Board of Commissioners, your petitioner prays that a writ of *certiorari* may

issue out of this court to be directed to the said Henry C. Wilcox, Richard Boardman and Harry W. Grinnell, Police Commissioners of the Town of Tiverton, commanding them to certify their records as such commissioners relative to said proceedings to this court and that the action of said Board of Commissioners in the premises may be quashed.

"And your petitioner further prays that a citation may issue to Henry C. Wilcox, Richard Boardman and Harry W. Grinnell, all of said town of Tiverton, Police Commissioners as aforesaid, to appear and show cause, if any they have, why the prayer of this petitioner should not be granted.

"WM. B. GREENOUGH,

"<i>Attorney General.</i>

"Oct. 25, 1909."

to which the respondents have made answer, as follows:

"Henry C. Wilcox, Richard Boardman and Harry W. Grinnell, as the Board of Police Commissioners of the Town of Tiverton, answering the petition in the above entitled cause, say:

"*First:* The Board of Police Commissioners admit the allegation contained in· paragraphs No. 1 and No. 2 of said petition.

"*Second:* For answer to paragraph No. 3 of said petition said Board of Police Commissioners aver that the said Union Wine Company was at the time of the transfer of said license, a corporation duly ·organized under the laws of the State of Rhode Island, and is by its charter authorized to engage in the business of manufacturing, distilling, buying, selling, importing, exporting, exchanging, and otherwise acquiring, holding, owning, dealing in or disposing of wines, spirits, liquors, ales, beers, at wholesale or retail or otherwise, . . . and as such corporation is a citizen resident of the State of Rhode Island, and, as said Board is informed and advised, is a proper party to be granted a license under and by virtue of the authority conferred by Section 2 of Chapter 102 of the General Laws of the State."

The legislative meaning of the word "citizens," in the clause "citizens resident within this state," contained in Gen. Laws,

cap. 102, § 2, whereof the material portion is set forth in the foregoing petition, is what is particularly sought in this inquiry. (1)   The respondents affirm, and the petitioner denies, that it includes domestic corporations.

The definition of the noun " citizen," according to Webster (Internat. Dict.), is; "1. One who enjoys the freedom and privileges of a city; a freeman of a city, as distinguished from a foreigner, or one not entitled to its franchises.   2. An inhabitant of a city, a townsman.   3. A person, native or naturalized, of either sex, who owes allegiance to a government and is entitled to reciprocal protection from it.   4. One who is domiciled in a country, and who is a citizen, though neither native nor naturalized, in such a sense that he takes his legal *status* from such country." According to Bouvier Law. Dict.: "Citizen.   In English Law.   An inhabitant of a city.   *   *   The representative of a city, in parliament.   *   *   In American Law.   One who, under the constitution and laws of the United States, has a right to vote for representatives in Congress, and other public officers, and who is qualified to fill offices in the gift of the people.   *   *   One of the sovereign people.   A constituent member of the sovereignty, synonymous with the people. *   *   A member of the civil state entitled to all its privileges. *   *   A person may be a citizen for commercial purposes and not for political purposes: 7 Md. 209.   *   *   *   "

Although the sale of intoxicating liquors has been subject to legislative control ever since the settlement of this colony and State, the word " citizen" in this connection was first introduced in Pub. Laws, cap. 508, passed June 25, 1875, wherein it was provided that the town councils and boards of aldermen might grant or refuse to grant licenses to sell liquors, within their respective town or city, "to such number, and so many citizens resident within their respective town or city, as they may think proper." By the provisions of the Gen. Stats. (1872), cap. 79, § 2, said councils and boards might grant or refuse to grant such licenses "to such number, and so many persons within their respective town or city, as they may think proper." It is perfectly apparent from this examination that the change was made by inserting the words " citizens resident" in place of the word "persons" in the statute. The reason

for making the change is not indicated in the act itself, nor is there any preamble thereto.   Gen. Stats. cap. 22 "Of the Construction of Statutes," § 5, provided that "The word 'person' may be construed to extend to and include copartnerships and bodies corporate and politic." This provision has been continued in the various revisions of the statutes, and still remains in force.   By the provisions of Gen. Stats. cap. 22, § 15, acts of incorporation were deemed to be public acts for certain purposes, and such has been the law from that time to the present.   Therefore the court will take judicial notice of acts of incorporation for the purposes of construction.   *Foley* v. *Ray*, 27 R. I. 127–129.   The first paragraph of each chapter on the construction of statutes requires that its provisions shall be observed in construing statutes, unless the observance of them would lead to a construction inconsistent with the manifest intent of the General Assembly, or be repugnant to some other part of the same statute.   It is therefore apparent that the legislative intent is to be ascertained with the aid of the rule thus furnished if possible; and if not, then in some other manner.   The statute of constructions contains no definition of the word "citizens."   It is not claimed, however, that it was or is beyond the power of the General Assembly to construe the word "citizen" so as to include corporations; the claim is merely that such power has not been exercised.   Whether the word includes corporations or not, must be ascertained without the aid of the statute.   One ground of argument for the petitioner was that the change from "persons" to "citizens resident" in Pub. Laws, cap. 508, may have been made to exclude corporations in order to confine the issuance of licenses to persons having the right to vote.   If such had been the intention of the legislature they could have used words more apt for the purpose.   The word "elector," or "voter," is a technical term descriptive of a citizen having constitutional and statutory qualifications that enable him to vote; and if the legislature had intended to restrict licenses to electors, or voters, it is to be presumed that such appropriate words would have been employed for that purpose, to avoid ambiguity.   The legislature did employ the words "legal voter" in Gen. Laws, cap. 102, § 29, which authorizes such a person to make complaint for cer-

tain purposes.   It is therefore manifest that the distinction between citizens and legal voters was apparent to the law-making body.   Before 1875, the statutes permitted licenses to be granted to "persons" within towns and cities, irrespective of their citizenship or alienage, and without regard to their residence, and such permission was sufficient to include corporations both foreign and domestic.   The language was also broad enough to include women, children, and persons under guardianship.   But the other provisions, including that requiring a bond to be given by the person applying for the license, clearly indicated the intention of the legislature to exclude persons under disability.   We think that the evident purpose of the legislature in making the change was to exclude *alien residents* from holding licenses under the provisions of the act.   The argument that if the words "citizens resident" include all persons except *aliens resident* such construction would include women, children, and persons under disability, may be disposed of by the consideration that the statute in question is no more obnoxious to that objection than the prior one heretofore referred to, and that some of the same, together with additional, safeguards surround it.   Whether the legislature intended that corporations should be included within the term "citizens resident," may be gathered from their acts.   If the General Assembly has created corporations for the express purpose of doing business that can only be done by resident citizens, such fact furnishes conclusive evidence of legislative construction, for it is not to be presumed that the legislature acted abortively.   Under Pub. Stats. 1882, cap. 87, § 1, no person shall manufacture or sell, or suffer to be manufactured or sold, etc., within this State, any ale, wine, rum, or other strong or malt liquors, etc., unless as thereinafter provided. Section 2 allowed town councils and boards of aldermen of cities to grant or refuse to grant licenses to such number and so many citizens resident within their respective town or city, for the sale of pure spirituous and intoxicating liquors, within the limits of such town or city, as they may think proper.   Section 11 fixes the amount of fees, and also provides that a license to manufacture pure liquors shall carry with it the right of sale, at his manufactory, by the manufacturer, of

pure liquors manufactured by him. While this statute was in force, on May 31, 1883, the General Assembly passed "An Act to Incorporate the Rhode Island Brewing Company," whereby the persons therein named, and their associates, successors, and assigns, were constituted and created a body corporate and politic by the name of The Rhode Island Brewing Company, for the purpose of manufacturing and brewing lager beer, beer, and ales, and the transaction of any other business connected therewith or incident thereto, with the powers, privileges, and liabilities incident to corporations under the provisions of Pub. Stats. caps. 152 and 155. The capital stock was not to exceed one hundred thousand dollars. Under the provisions of Pub. Stats. cap. 27, § 14, it was necessary for the incorporators to pay into the general treasury the sum of one hundred dollars as a tax before organization of the corporation. On May 29th, 1895, the General Assembly passed an act changing the name of said corporation to James Hanley Brewing Company. May 29th, 1891, the General Assembly passed an act to incorporate the Mount Hope Brewing Company for the purpose of "manufacturing, brewing, and selling lager beer, beer, porter, and ales." July 23, 1891, the General Assembly amended an act to incorporate the Hathaway Steam Trap Company, constituted for the purpose of manufacturing and selling steam traps, passed at the May session, 1891, so as to create a body corporate and politic by the name of the American Brewing Company, for the purpose of manufacturing and brewing lager beer, ales and porters, etc., with a capital stock of two hundred thousand dollars. May 17, 1895, the original act was further amended so as to constitute the Providence Brewing Company for brewing beer, ale, and porter. These are not the only instances of legislative action in the premises, but they are sufficient for the purposes. It is claimed, however, that the Union Wine Company, described in the petition and in the answer of the respondents, is a corporation not specially chartered by the General Assembly, but organized under Gen. Laws, cap. 176, § 2. This statute was (4) enacted by the General Assembly in accordance with the provisions of article IX of amendments to the constitution, adopted November 1892, whereof section 1 reads as follows:

"SECTION 1. Hereafter the general assembly may provide by general law for the creation and control of corporations: *Provided, however,* that no corporation shall be created with the power to exercise the right of eminent domain, or to acquire franchises in the streets and highways of towns and cities, except by special act of the general assembly upon a petition for the same, the pendency whereof shall be notified as may be required by law." Chapter 176, aforesaid, section 1, provides for the classification and formation of corporations, and it appears from an examination of the statute that there are three classes, viz., "Class I.—Business corporations; Class II.—Insurance and banking corporations; and class III.—Literary and scientific corporations and miscellaneous corporations." Section 2 aforesaid provides that any three or more persons of lawful age who shall associate by written articles which shall express, *inter alia,* their agreement to constitute an ordinary business corporation; the name by which it shall be known; the business for which it is constituted; the town or city in which it is to be located; the amount of the capital stock, etc., shall, upon complying with the requirements thereinafter provided, be and become a corporation for the transaction of the business named in said articles of agreement, with a proviso excluding the formation of certain kinds of corporations therein set forth. It was urged in argument that a corporation formed "to engage in the business of manufacturing, distilling, buying, selling, importing, exporting, exchanging, and otherwise acquiring, holding, owning, dealing in or disposing of wines, spirits, liquors, ales, beers at wholesale or retail or otherwise," is not an ordinary business corporation. It is true that by very many worthy people the liquor business is regarded as unusual and peculiar; but the question to be determined is not whether the liquor business is ordinary or extraordinary, in our opinion, but whether a corporation can be formed for the purpose of carrying on that business, under the provisions of said Gen. Laws, cap. 176. Is such a corporation included in any of the classes specified therein? It certainly does not belong in either class II or III. Is it embraced within the provisions of "Class I.—Business corporations?" The definition of the noun "business," according to Webster's

Internat. Dict. is: "3. Financial dealings; buying and selling; traffic in general; mercantile transactions." A corporation organized for such purposes is, therefore, a business corporation.

Corporations, constituted merely for the purpose of conducting business, which do not possess extraordinary corporate powers, especially the powers enumerated in the provisos contained in said article IX of the amendment to the constitution and in said Gen. Laws, cap. 176, § 2, are ordinary business corporations. The petitioner objects that a corporation can not be licensed as a resident, "for that word implies intent to remain, as well as actual location in a place, and a corporation can not strictly be said to be capable of an intent to remain."

(5)    The sufficient reply to the objection may be found in the opinion of Durfee, C. J., in *Stafford* v. *Am. Mills Co.*, 13 R. I., 310: "We do not think a foreign corporation can under any circumstances be regarded as a *resident* of the State, in the absence of any legislation recognizing it or giving it a *status* as such. The proper seat or "residence" of such a corporation is the State which created it and which continues it in existence, otherwise the corporation might have its residence in a multitude of jurisdictions." The residence of a corporation is created for it by act of law, and can not be changed by act of the corporation. A more permanent residence than that of a domestic corporation in the State which created it can hardly be conceived.

We are therefore of the opinion that the legislature by their acts have deemed corporations, created by them for the purpose of conducting the liquor business, to be "citizens resident," for the purposes set forth in Gen. Laws, cap. 102, § 2.

This conclusion in relation to a purely local matter renders unnecessary any consideration of the cases contained in the long list of Federal and State decisions, regarding citizenship of corporations for certain purposes, cited by counsel for the respective parties.

For these reasons the petition must be denied and dismissed.

*Littlefield & Barrows and Samuel H. Davis,* for petitioners.

*Tillinghast & Murdock,* for respondents.

*Gorman, Egan & Gorman and Michael J. Lynch,* of counsel for certain domestic corporations.