DECISION
This matter is before the Court on Aetna Casualty Surety's (hereinafter Aetna) complaint for declaratory judgment. Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1985 Reenactment) § 9-30-1.
FACTS AND PROCEDURAL HISTORY
In its complaint filed September 2, 1992, Aetna seeks this Court's determination of the rights between the parties pursuant to an excess indemnity policy covering an automobile driven by defendant David Moniz and owned and insured by City Fence and Ironworks, Inc. (hereinafter City Fence), his employer at the time of a motor vehicle accident on November 5, 1988.
Pursuant to G.L. § 9-30-3, Aetna specifically requests this Court construe provisions 2.1 and 6.5 of excess indemnity policy #06 xs 459571 WCA and the amendment to said policy (special retained limits — Massachusetts) (hereinafter collectively Umbrella Policy) and to declare the rights, status ad legal relations of the parties arising from said policy provisions in favor of Aetna. Based on its proffered construction of the Umbrella Policy, Aetna prays for an order and judgment declaring:
(1) That the defendants, David Moniz, Cindy Moniz, Erin Moniz, p.p.a. David Moniz and Cindy Moniz and the Estate of Brendan Moniz (hereinafter collectively Moniz) are not entitled to underinsured or uninsured coverage or liability coverage under the Umbrella Policy as neither City Fence nor David Moniz [is] legally obligated to pay damages as a result of the auto accident on November 5, 1988, and the policy does not insure against underinsured or uninsured operators.
(2) In the alternative, defendants are not entitled to coverage unless they demonstrate damages in excess of the Umbrella Policy and then only for the excess of that amount.
(3) That petitioner Aetna recover its costs, expenses of suit and reasonable attorney's fees.
(4) That petitioner Aetna be accorded whatever further relief this Court deems just.
Thereafter, on October 1, 1992, Moniz answered and therein prayed that the subject Umbrella Policy be construed "as to provide excess policy coverage for underinsured/uninsured motorist coverage." Additionally, on October 6, 1992, Moniz filed a counterclaim essentially asserting that the subject vehicle should have been registered in Rhode Island and governed by G.L. 1956 (1994 Reenactment). § 27-7-2.1 requiring underinsured/uninsured motorist coverage in the sum of $500,000 the amount equal to the limits of liability contained in the policy.[1] Based on these assertions, Moniz essentially prays that the Court reform the primary insurance policy #006 my 463 710 CAA (hereinafter Primary Policy) to provide $500,000 of underinsured/uninsured motorist coverage in compliance with G.L. § 27-7-2.1 for the subject accident.
In its answer (sic) to counterclaim, Aetna stated, in part, that the Primary Policy carried liability limits coverage in the amount of $500,000 and underinsured/uninsured motorist coverage in the sum of $25,000/$50,000. As affirmative defenses Aetna essentially pleads that (1) Moniz fails to state a cause of action upon which relief can be granted by failing to allege that Aetna did not make available to City Fence any coverage in excess of the $25,000/$50,000 limits that were purchased and (2) Moniz fails to state a cause of action under G.L. § 27-7-2.1 as said statute applies only to policies delivered or issued for delivery in Rhode Island, and Moniz failed to allege that the policy under which he is seeking coverage was delivered or issued for delivery in Rhode Island.
After Moniz failed timely to respond to Aetna's request for admissions filed October 23, 1992, said admissions were deemed admitted by agreement of the parties on June 16, 1993. Said admissions provide that the Umbrella Policy issued by Aetna and numbered 06 xs 459571 WCA is a full and complete copy of the excess policy under which coverage is being sought by Moniz. After hearing, on February 2, 1994, the Honorable Justice Savage entered an order granting, by agreement of the parties, Aetna's motion for summary judgment only to the extent that the Umbrella Policy is not applicable to this matter.
Remaining before this Court then is Moniz's counterclaim for reformation of the Primary Policy. Specifically, the facts as jointly stipulated by the parties are:
 1. On November 5, 1988, David Moniz, Cindy Moniz, Brendan Moniz and Erin Moniz were residents of Warwick, Rhode Island.
 2. City Fence was incorporated in the State of Rhode Island on or about December 26, 1961.
 3. City Fence filed an annual report with the Corporation Division of the Secretary of State of Rhode Island for the calendar year 1988. (See Def. Exh. B).
 4. On November 5, 1988, David Moniz was driving a 1987 Oldsmobile station wagon owned by his employer, City Fence (hereinafter insured Vehicle).
 5. On November 5, 1988, Cindy Moniz, Brendan Moniz and Erin Moniz were passengers in the vehicle being driven by David Moniz.
 6. On November 5, 1988, the automobile in which the Moniz family was riding was involved in a head-on automobile accident on Airport Road in Warwick, Rhode Island (hereinafter automobile accident) with a vehicle driven by Karen Langevin (hereinafter Langevin) and another vehicle driven by Michael J. Mitchell (hereinafter Mitchell).
 7. The automobile accident occurred when the vehicle driven by Mitchell crossed the center line and collided head-on into the insured vehicle and then collided with the Langevin vehicle.
 8. David Moniz, Cindy Moniz and Erin Moniz suffered personal injuries as a result of the automobile accident.
 9. Brendan Moniz died as a result of his injuries sustained in the automobile accident.
 10. As a result of the automobile accident, Mitchell was charged and convicted with driving to endanger, death resulting therefrom, and driving under the influence.
 11. At the time of the automobile accident, Mitchell had no insurance.
 12. On November 5, 1988, David Moniz was an employee of City Fence.
 13. At the time of the automobile accident, David Moniz was driving the insured vehicle, a company car issued to him by his employer, City Fence.
 14. On November 5, 1988, City Fence owned three automobiles and leased one automobile which it allowed its salesmen to utilize for business.
 15. All four of the automobiles owned and/or leased by City Fence including the automobile utilized by David Moniz and involved in the accident were registered in the Commonwealth of Massachusetts.
 16. The automobile being driven by David Moniz at the time of the accident on November 5, 1988 was insured by Aetna.
 17. The policy issued by Aetna to City Fence was a Massachusetts fleet automobile insurance policy.
 18. David Moniz, Cindy Moniz, Erin Moniz and the Estate of Brendan Moniz have made a claim against Aetna pursuant to the fleet policy issued to City Fence for uninsured/underinsured motorist benefits under the Primary Policy.
 19. The declarations sheet of the policy of insurance issued to City Fence by Aetna contained uninsured/underinsured motorist coverage in the amount of $25,000 per person, $50,000 per accident.
 20. The claims of the Moniz family exceed $50,000.
 21. Under the Primary Policy, Aetna has tendered $50,000 to the Moniz family which has been rejected.
 22. The Moniz family contends that Rhode Island General Laws § 31-1-18, § 31-7-1 and § 27-7-2.1
apply in this matter.
 23. Aetna contends that Massachusetts law should apply to this matter and that even if Rhode Island law is determined to be applicable, Rhode Island General Laws § 27-7-2.1 does not apply to the fact scenario of this case.
During the trial of this matter, City Fence's witness and the employee of City Fence, Eugene McGovern (hereinafter McGovern), testified that the only place where City Fence maintains any actual office facility is in South Attleboro, Massachusetts (hereinafter office). McGovern further testified that the Rhode Island address reported in City Fence's 1988 Annual Report filed with the Corporation Division of Secretary of State of Rhode Island is merely the address of its legal counsel, its agent for service in Rhode Island.
Moniz does not dispute that the Primary Policy was issued and delivered in Massachusetts. (Def. Memorandum, p. 9).
CHOICE OF LAW
In this matter, it is undisputed that the Primary Policy was issued by Aetna and delivered to City Fence's office in South Attleboro, Massachusetts. Said policy covered the insured vehicle which was owned by City Fence and was registered in Massachusetts. The general rule as to the construction of contracts is applicable to contracts of insurance. Coderre v.Travelers Ins. Co., 48 R.I. 152, 155, 136 A. 305, 306 (1927). "In the absence of a special provision in the contract to the contrary, a contract is to be construed in accordance with the law of the state where it is made." Id. (Citation omitted);Baranski v. Massachusetts Bonding Ins. Co., 60 R.I. 140, 142,197 A. 390, 391 (R.I. 1938). In Baranski, where the insurer contracted with an individual to insure his motor vehicle in Massachusetts for statutory coverage under the compulsory automobile liability insurance law of that state, our Supreme Court held that "the construction of the policy is to be determined by the law of Massachusetts at the time the contract of insurance was made . . . ." Baranski, 60 R.I. at 142, 197 A. at 391. In Baker, a case more factually similar to the instant matter, a Rhode Island resident, the president of a corporation, while driving an automobile registered in Massachusetts from the corporation's principal place of business and covered by a fleet policy of automobile insurance issued and delivered in Massachusetts, was involved in a motor vehicle accident in our state with an uninsured motorist. Because the policy of insurance was executed and delivered in Massachusetts to a corporation the principal place of business for which was located in Massachusetts, our Supreme Court held that "the construction of th[e] policy must be determined in accordance with Massachusetts law." Baker v. Hanover Ins. Co., 568 A.2d 1023, 1025 (R.I. 1990).
In this matter, uncontroverted testimony established that the only actual place where City Fence maintains any office is in Massachusetts. The insured vehicle was registered in Massachusetts, and the Primary Policy, a fleet policy of automobile insurance was written under the laws of the Commonwealth of Massachusetts. In light of the aforecited cases and the instant facts, this Court believes that the Primary Policy must be construed in accordance with the law of the Commonwealth of Massachusetts, the state wherein it was made and delivered.
In an effort to avoid such a result, Moniz argues, in the alternative, that because David Moniz is or City Fence should be considered a resident of Rhode Island, the insured vehicle should have been registered in this state and as such, subject to our insurance laws, specifically including the potential maximum amount of uninsured coverage under G.L. 1956 (1994 Reenactment) § 27-7-2.1(a). As discussed hereinafter, with regard to David Moniz, Moniz contends that General Laws § 31-1-18, § 31-8-1, and § 31-3-2 should control and, with regard to City Fence, after attempting to establish resident status of City Fence, Moniz relies on § 31-3-2. Moniz contends that these statutes are clear manifestations of legislative intent that certain vehicles must be registered in Rhode Island and subject to our insurance laws. Essentially, Moniz asks the Court to deem the insured vehicle registered in this state and thereby reform the Primary Policy under § 27-7-2.1(a) to provide $500,000 of uninsured motorist coverage. The facts before this Court, however, clearly indicate that the insured vehicle was registered in and insured under the laws of the Commonwealth of Massachusetts.
Recently, in a matter involving an insurance policy issued to a Maryland resident under the laws of the state of Maryland, our Supreme Court construed the language of § 27-7-2.1(a) which refers to policies ". . . delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state . . . ." Said language "indicates that the statute was intended to apply to policies issued within the state of Rhode Island." McNamara v. State Farm Ins. Co., 633 A.2d 1360, 1360 (R.I. 1993). Because there is no evidence before the Court that the Primary Policy was delivered or issued for delivery in Rhode Island, § 27-7-2.1(a) is not applicable to this matter. By relying on the resident status of David Moniz or the proposed resident status of City Fence, Moniz argues that § 27-7-2.1(a) is applicable.
With regard to David Moniz, Moniz asserts and it is undisputed, that David Moniz is a resident of Rhode Island pursuant to G.L. 1956 (1994 Reenactment) § 31-1-18. Moniz then cites a portion of our statute which addresses registration of foreign vehicles, specifically G.L. 1956 (1994 Reenactment) § 31-7-1(b). Said statute provides, in relevant part, that, "any foreign vehicle(s) parked or garaged overnight in the state for more than thirty (30) days in the aggregate in any one year which is owned and/or operated by a resident of this state as defined in § 31-1-18 shall register the vehicle(s) . . . like vehicle(s) owned by residents of this state." General Laws § 31-7-1(b). Thus, Moniz argues, because the insured vehicle while assigned to employee David Moniz had been parked overnight for the requisite period in 1988, it should have been registered in Rhode Island and, as such, would have been governed by our insurance laws. Even if the insured vehicle were registered in Rhode Island, there is no evidence establishing that City Fence would have contracted for uninsured coverage in an amount equal to the limit of liability.
Alternatively, although not pleaded in its counterclaim, while recognizing that City Fence is physically located in Massachusetts, Moniz contends that City Fence should be considered a Rhode Island resident and as such, should have registered the insured vehicle in this State. To substantiate City Fence's residency, Moniz references City Fence's Annual Report for the year 1988 filed with our Secretary of State. (Def. Exh. B). In said Annual Report, City Fence provides a Providence address for the inquiry "business address in Rhode Island;" no response for the inquiry "if foreign corporation, address of its principal office;" and "Rhode Island" for the inquiry "It is incorporated under the laws of." As a resident, Moniz contends, G.L. 1956 (1994 Reenactment) § 31-3-2 requires City Fence to register the insured vehicle in Rhode Island. Said statute provides, in relevant part, that, "Every motor vehicle . . . owned by a resident of this state when operated . . . upon a highway within this state for a period of thirty (30) days shall be subject to the registration provisions of chapters 3-9, inclusive of this title . . . ." General Laws § 31-3-2. Although City Fence might be a resident of Rhode Island for some purposes[2] this Court finds, pursuant to General Laws § 31-1-2, § 31-1-17(a), and more specifically, § 31-1-18, City Fence is not a resident of Rhode Island for purposes of registration of a motor vehicle. Although a domestic corporation, for several years, City Fence's only actual site of business is in South Attleboro, Massachusetts. City Fence does not maintain any site of business in Rhode Island. Consequently, Moniz's reliance on § 31-3-2 is misplaced and this Court, based upon the facts and applicable law, declares that the Primary Policy must be construed under the laws of the Commonwealth of Massachusetts.
The prevailing party shall prepare and present an appropriate Order which will be entered upon notice to defendants' counsel.
[1] Said statute requires uninsured motorist coverage in an amount equal to the limit of liability contained in the policy unless the insured selects a lesser amount in writing.
[2] See Greenaugh v. Board of Police Comm'rs. of Tiverton,30 R.I. 212, 220, 74 A.2d 785, 789 (1909).