(Decided February 28th, 1895.)

---

## JOHN F. LANGHAMMER and RICHARD A. DUNN *vs.* JOHN MUNTER and Others, Officers of Registration, and JAS. BOND, Clerk, &c.

*Residence of Voters—Effect of Registration—Constitution, Article 1, Section 1.*

The entries made by a Register of Voters concerning the qualifications of a voter, are the findings of an officer charged with the duty of ascertaining their correctness, and they should not be disturbed until their falsity is established by evidence.

It is not necessary, under Constitution, Art. 1, sec. 1, that a voter should have the same fixed house of residence for the prescribed period of six months; it is sufficient if he resides anywhere, or in any number of places, within the voting district for the required time.

Temporary absence from one's home, with a continuous intention to return, will not deprive one of his residence.

Upon a petition to strike from the registry list the name of a certain voter, registered as having lived for four years in a certain ward, the evidence showed that his name was not upon the police census of voters; that he did not live at the particular house given as his residence, but had occasionally slept there and had received the permission of the occupier of the house, who had known him for years, to register therefrom; that a *subpœna* for him had been returned *non est*, and that he was a seafaring man. *Held*, that the evidence was not sufficient to authorize the Court to strike his name from the list of voters.

Appeal from an order of the Court of Common Pleas (PHELPS, J.) The appellants, voters of the first ward of Baltimore City, filed a petition in said Court against the Officers of Registration of the fifth precinct of that ward, and Jas. Bond, Clerk, &c., alleging that James Bosley and Charles Williams, who had been registered in that precinct at the September sitting, 1894, were not duly qualified voters of the precinct, and were not entitled to be registered therein, and they prayed the Court to strike the names of Bosley and Williams from the registries of said precinct. The evidence is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE, ROBERTS and BOYD, JJ.

*Charles J. Bonaparte* (with whom was *John C. Rose* on the brief), for the appellants.

The question to be determined upon this appeal is whether, upon the evidence in this case, the alleged voters, Bosley and Williams, resided in the fifth precinct of the first ward of Baltimore City at the time they registered therein. If the names in question were not those of men who at the time they registered, resided in the first precinct of the first ward, those names had no right upon the registries of the precinct, and the order appealed from is erroneous, and should be reversed.

There has been much discussion as to what constitutes residence within the meaning of the constitutional provisions common to all of the States, making residence one of

the qualifications to be possessed by all persons seeking to exercise the right of suffrage. It is true that the principles underlying all the decisions are in substance the same, but .the infinite variety of facts, and of combination of facts with which the Courts have had to deal, have frequently made the application of those principles very difficult. Under no definition of residence, however, which has ever been given by lexicographers, text writers or Courts, is it possible to contend that the alleged voters in question had any residence in the fifth precinct of the first ward.

A man's legal residence is his true home or permanent abode, to which, as such, whenever he is absent, he intends to return. *Paine on Elections,* secs. 46, 42 ; 2 Kent Com. 431 ; *Roosevelt* v. *Kellogg,* 20 Johns. 208 ; 8 Wend. 140 ; *Long* v. *Ryan,* 30 Gratt. 720 ; *Johnson* v. *People,* 94 Ill. 505; *Matter of Collins,* 64 How. Pr. 65 ; *Lambe* v. *Smythe,* 15 M. & W. 433 ; *Dale* v. *Irwin,* 78 Ill. 182 ; *Opinion of the Judges,* 5 Metc. 588 ; *Fry's Election case,* 71 Pa. St. 302 ; *Sprague* v. *Houghton,* 3 Scammon, 377 ; *French* v. *Lighty,* 9 Ind. 477.

Accepting the definition of this Court in *Shaeffer* v. *Gilbert,* 73 Md. 70, which is the definition of all other Courts, that a man's residence, as the word residence is used in constitutional and statutory provisions conferring the right of suffrage and regulating its exercise, means a man's home, can it be seriously contended that these alleged voters had any home in the residence of the person who allowed them to sleep for two nights in his kitchen? That house was certainly not their home. Its occupant would have been the last man to admit that they had any home with him, and if they had not a home there, they did not reside there, and if they did not reside there, they had no right to register from there or vote from there. *The Constitution of Md.,* Art. 1, sec. 1; *Kemp et al.* v. *Owens,* 76 Md. 238.

It may be argued here, as it was argued below, that these men had as much of a residence at the place from which they registered as they had anywhere else. If this were

true, it would be entirely irrelevant. The Constitution of this State does not confer the right of suffrage upon every adult male citizen of the United States who may seek to exercise it. In addition to sex, age and citizenship, it requires residence. The man who has not the residence prescribed by the Constitution, is no more entitled to vote than is an alien, a minor or a woman. In point of fact, however, it is not, and can not be true, that the house from which they registered comes as near being their residence as any other place. Every man has had a residence at some period of his life. That residence remains his legal residence until he has acquired another. *Thorndyke* v. *The City of Boston,* Metc. 242, 245 ; *McCrary on Elections,* sec. 71 ; *French* v. *Lighty,* 9 Ind. 478 ; *Paine on Elections,* sec. 45 ; *Muffet* v. *Hill,* 22 Northeastern, 322. In Illinois it has been decided that transient persons acquire no residence in the State. *Behrensmeyer* v. *Kreitz,* 26 Northeastern, 712 ; 135 Ill. 591. In the same State it was decided that a man who sometimes pensioned himself upon a friend in one town, and sometimes upon relatives in another town, and sometimes with different persons living in the district in which he claimed to vote, had no residence in it, and no right to vote therein. *Shepherd* v. *Allen,* 17 Northeastern, 756.

In this case the evidence leaves no room to doubt that the men whose right to register is in controversy, slept at this house for the purpose, and the mere purpose, of registering from it. This appears clearly from the fact that they asked the owner of the house whether he had any objection to their registering from it. They slept in his house in August; a month later, when in the city to register, if in fact they were the men who registered, they did not go to his house, thereby showing in still another way that they did not regard it as their home. In other words, the question here presented is, whether a man can select his voting precinct, and establish his right to vote there, by the simple expedient of sleeping one or two nights in that precinct for the very purpose and for the purpose alone, of qualifying himself to vote therein ?

*Peter J. Campbell* and *James H. Preston* (with whom were *Wm. S. Bryan, Jr.*, and *Edward D. Fitzgerald* on the brief), for the appellees.

The undisputed evidence sustaining the qualifications required by the Constitution, is that the applicants, Bosley and Williams, were each born in Baltimore City; that they were, respectively, 25 and 22 years of age; that they had resided in the city (State), respectively, 25 and 22 years; in the ward, respectively, 4 years and 2 years, and in the precinct, each 2 years. This is proof fulfilling all the demands of the franchise, subject to the requirements of the Constitution. The single offer of evidence to contradict this was that the police census does not show the names of Bosley and Williams, and that No. 2225 Essex street cannot be their residence, because Mr. Eisenreich had allowed them to sleep but two nights in his kitchen, though on two former occasions they had in a like manner slept in his house for a night or two. There is no evidence or suggestion that their residence was at any other place, and that the applicants for registration were actually registered in any other place, the only witness for the applicants testifying that he thought that they had no permanent house, and if they had, he did not know where it was. As a matter of fact, these watermen or oystermen, from their circumstances and the nature of their calling, had no other home than their sleeping place, from which to register.

It will be seen that there is nothing in the law requiring accuracy as to the number of the house or any particularization in indicating the exact spot of residence, it being sufficient if the uncontroverted proof is that the applicant is a resident of the precinct, ward, district and State, and there is no power of the registers or Courts allowing registers to strike names of registered applicants on account of any inaccuracy, if any inaccuracy there is, in giving the exact location of applicants' place of domicile. If it be admitted that they never lived at No. 2225 Essex street, and never were there, it would be improper to strike their

names from the list in the absence of proof that they were not at that time residents of the ward and precinct as sworn to by them in their application.

PAGE, J., delivered the opinion of the Court.

This is an appeal from an order of the Court of Common Pleas of Baltimore City, dismissing the petition of the appellants praying that the names of James Bosley and Charles Williams be stricken from the registry of voters of the fifth precinct of the first ward of Baltimore City.

At the hearing the petitioners produced the registry of voters of the precinct and ward, and read in evidence so much of the contents thereof as related to the registration of the persons alleged by the petition to be improperly registered. The appellants' counsel, however, contend that these entries can only be used for the purpose of showing what the appeal is from, and are not evidence to be regarded by the Judge in determining whether the register has acted properly. We cannot adopt this view. The duty of a register of voters under our statute is not merely ministerial. It is his duty to interrogate the party applying for registration under oath, touching his right to register ; and if, after this primary examination of the applicant, and of such other evidence  *  *  as may be immediately accessible, he is in doubt, he may adjourn his determination to a subsequent day, when he must proceed to determine whether the applicant is a qualified voter or disqualified. He is thus compelled to take evidence, weigh its force and effect, and finally to "determine ;" and it is from this determination that any-one who thinks himself agrieved may appeal to one of the Judges of the Supreme Bench of Baltimore City (if the election precinct is in Baltimore City.) The appeal is by petition, and with it shall be filed certified copies of all the entries in the registry of voters relating to the subject-matter, and if, in the opinion of the Judge, the petition and exhibits show a *prima facie* cause of complaint, he orders the proceedings provided by the Act. After answer is made and

evidence adduced, the Court is required to consider, in making up its determination, the petition (which includes the entries), the answers and such testimony, for or against the petition, as may be offered, and from the whole case thus made up, decide whether the party is or is not a qualified voter. These entries are not only the sworn statements of the applicant, but also the deliberate findings of an officer charged with the public duty of determining their correctness, and as such should not be disturbed until their falsity has been established by sufficient evidence.

Adopting this principle in the case we are now considering, what does the proof establish? There is no evidence assailing such entries as show that James Bosley is white, twenty-five years of age, and has resided in Baltimore City twenty-five years, and in the ward four years. There is no sufficient evidence to controvert the entry with respect to his residence (the nature of which, as proven, will be hereinafter examined) in the precinct. The proof that his name does not appear upon the police census of registered voters, is too uncertain to be entitled to much weight. The fact that Bosley was a sea-faring man, might fully account for his absence at the time the census was taken; even if it be assumed that the police performed their work with perfect accuracy. It was proved by the testimony of Charles A. Eisenreich, that he resided at 2225 Essex street (the place Bosley had stated as his residence in the ward and precinct); that neither of the alleged voters had ever lived there, but that he knew them, and, in the month of August, 1894, had permitted them, at their request, to sleep for two nights in his kitchen; that they had asked him to permit them to register from his house, and he had replied that he did not object, if it was not contrary to law; that the alleged voters were two young men who "followed the water," and he supposed they were then down the bay dredging. He did not know whether they had any permanent home; thought they had not, and if they had, he did not know where it was. He had known

them for some years, and on one or two previous occasions they had, in like manner, slept at his house for a night or two at a time, but never longer. It was also shown that *subpœnas* had been issued for each of the parties, and returned by the sheriff *non est.* This is a full statement of all the evidence in the cause. We have stated it particularly with reference to James Bosley, but what has been said is equally applicable to the case of Charles Williams.

Under these circumstances the appellant contends that neither of these men is a qualified voter and entitled to be registered. This depends on the meaning of the word " residence," as used in the first section of Article 1 of the Constitution, when applied to the particular proof in this case. What constitutes " residence" within the meaning of this section and Artiele of the Constitution, has frequently been the subject of judicial decision, in this State and elsewhere. It has often been held to be equivalent to the word " home," in the sense of a house, to which one, whenever absent, intends to return. It undoubtedly carries with it an element of permanence, differiug, however, widely in special cases. " The word 'home' suggests relations differing in breadth and strength, though not in kind, when applied on the one hand, to a farmer who has resided since his birth, and expects to reside until his death, on the same spot, and on the other hand to the clergyman whose home may change in two years, or to the railroad laborer whose home may change in two months." *Paine on Elections,* 46 ; *Chase* v. *Miller,* 41 Penn. St. 204 ; *Liucoln* v. *Hapgood,* 11 Mass. 350 ; *Story on Conflict of Laws,* sec. 43. " Temporary absence, with a continuous intention to return, will not deprive one of his residence, though it extend through a series of years," *Cooley Const. Lim.* 600; *Fry's Election case,* 71 Penn. St. 302; nor will a sojourn, however prolonged, with the purpose of returning, be sufficient to acquire a residence. There must be the act of abiding, without the intention of removing therefrom. *Story on Conflict of Laws,* sec. 41, *et seq.* In other words, there must be, to constitute residence, an " actual home in the sense of

having *no other home* whether he intends to reside there permanently, or for a definite or indefinite length of time." *Shaeffer* v. *Gilbert*, 73 Md. 71. Residence, therefore, is a question depending upon fact and intention, and if so, it may be applicable to a particular spot, or to a whole country. A person who wanders from country to country, with no intention of remaining fixedly anywhere, acquires no new residence. On the other hand, one who confines his wanderings to a particular country or locality, but declines to fix himself upon some particular spot, can very properly be said to be a resident of that country or locality. Home, domicile or residence, may therefore include a spot or a wide area. Each of these words may be applied either to a house, a precinct, a ward, a county or a State. *Dicey on the Law of Domicile*, page 55, *et seq.* "It is obvious that * * * State residence and the district residence are of the same nature, and whatever is necessary to constitute the one, is essential to define the other." *Fry's Election case*, 71 Pa. St. 306.

The framers of our Constitution have in the 1st section of Article 1 clearly recognized these applications of the word residence. That section prescribes as the qualification of a voter, that he shall be a resident of the State for one year, and a resident of the district six months. There is no requirement that the proposed voter shall have some particular spot, which he calls his home; provided he makes his home (in the sense of having no other home), anywhere, or in however many places, for the required times, within the limits of the State and the voting district. Probably it was borne in mind that numbers of citizens, through misfortune or otherwise, were without dwelling places, but there is no evidence to be found in any part of the Constitution that these were to be denied the privilege of the elective franchise. On the contrary, it seems to have been the purpose to confer the right of suffrage upon every male citizen who has attained the age of twenty-one years, only requiring, for wise reasons, that every such person

shall have resided in the State one year, and in the voting district six months.   When the General Assembly came to provide by law for a uniform registration of voters, as required by the fifth section of Article 1st of the Constitution, it was careful to prescribe such regulations as should prevent abuse and fraud in the exercise of this great privilege.   The city of Baltimore having been divided into small precincts, officers of registration are provided for each, and large powers are given them effectively to discharge the duties imposed upon them.   For the purpose of clearly identifying the person applying to be registered, the officers of registration are to ascertain his name, color, age, place of birth, place of residence by street and number (if any), the time of his residence in the city and ward, and enter the same in the proper column of books prepared by the State and furnished them for that purpose.   Fraudulent conduct on the part of the registers, or of other persons in or about the registration of voters, is made a misdemeanor, punishable on conviction with heavy penalties. And in addition to all this, if any person, whether he be the person applying to be registered or any other person, shall think himself aggrieved by the action of the Officer of Registration, there is given the right of appeal to a Judge of the Supreme Bench.   If these safeguards should prove ineffectual to prevent the fraudulent practices which the counsel for the appellant seems to apprehend, it will be for the Legislature to devise and enact other provisions to accomplish the most desirable object of securing absolutely pure elections.   But whatever may be done, no restrictions can be imposed that will require other or different qualifications for voting, than those prescribed by the first Article of the Constitution of the State.

*Order affirmed.*

(Decided February 28, 1895.)