## SMITH v. THOMAS.

### Sac. No. 362; April 9, 1898.

#### 52 Pac. 1079.

**Elections—Illegal Votes.—Testimony by the Inspector of Elections** and the ballot clerk that they did not see a mark of identification on a ballot when they were counting them is sufficient to support a finding that such mark was placed thereon after it came out of the ballot-box.

**Elections—Illegal Votes.—Under Code of Civil Procedure,** section 1116, prohibiting the introduction of testimony of illegal votes in an election contest unless the contestant deliver to the defendant, at least three days before trial, a written list of the votes which he intends to prove were illegal, evidence as to the illegality of a vote is properly excluded which did not appear on the list served on the defendant, although it did appear on a list served by the defendant on the contestant.

**Elections.—The Legality of a Vote, in an Election** contest will not be determined where it was not claimed to have been cast for plaintiff, and it was not counted for defendant.

**Elections—Residence of Voter.—A Wood-chopper, Who had No Home,** but who made a particular place in a ward his home whenever in town or out of work for five years past, and who was sent there when sick, and who never voted in any other place for eleven years, is a legal voter in such ward.[1]

APPEAL from Superior Court, Tulare County; Wheaton A. Gray, Judge.

Action by M. W. Smith against J. W. Thomas. From a judgment for defendant, plaintiff appeals. Affirmed.

Power & Alford and Hannah & Miller for appellant; C. G. Lamberson and W. B. Wallace for respondent.

[1] Cited with approval in State v. Savre, 129 Iowa, 128, 113 Am. St. Rep. 452, 3 L. R. A., N. S., 455, 105 N. W. 389. In that case the court said, of an unmarried man who ate in one place and slept in another, but declared he intended to make the place where he ate his voting place: "A person cannot live in one place, and by force of imagination constitute some other his place of abode. The intent and the fact must concur. . . . . The home of an unmarried man is where he has his rooms in which he keeps such personal effects as he has, where he rests when not at work and spends his evenings and Sundays."

PER CURIAM.—Plaintiff brought this action to contest the right of defendant to exercise the office of supervisor of the county of Tulare, for supervisor district No. 3 therein, for the term commencing January 4, 1897, to which said office defendant had been declared elected by the board of supervisors. The court found that three hundred and forty-six votes were counted by the board of election of the several precincts for defendant, and three hundred and forty-two votes for plaintiff, and that the board of supervisors thereupon canvassed said votes and the returns, and properly certified and declared defendant duly elected, and issued to him a certificate of election. The result of the trial was, and the court found, "that plaintiff and defendant each received and were entitled to have counted for them three hundred and forty-three legal votes cast at said election," and, as conclusion of law, "that plaintiff take nothing by this action." The appeal is from the judgment, and is presented by bill of exceptions.

1. Appellant's first point arises from a certain ballot which it is claimed was erroneously counted for defendant. In the body of the ballot nothing irregular appears. Opposite the name of defendant is a cross stamped in its appropriate place. Above the printed matter on the ticket, in the open space at the right-hand top, and about opposite the words "General Ticket," are two crosses, apparently stamped with the same ink and stamp as used by the voter, and an ink blotch of same color (red) apparently made with some sort of stamp or the end of some kind of implement round in shape, and about the size of a silver five-cent piece. This impression may have been made with the reverse end of the stamp. The disk is not entirely covered with ink. Appellant objected to the ballot upon general grounds, and specially because it bore upon its face distinguishing marks (above described), which were placed there with the intention of fraudulently designating the choice of the voter casting the ballot. The trial court, after taking the evidence of the election officers as to the condition of the ballot at the time it was taken from the ballot-box, and also after taking the evidence of the custodian of the package of ballots subsequently to that time, held as a fact that said ballot was not marked upon when it came out of the ballot-box, but subsequently thereto, and ordered it counted for defendant. The evidence is not at all clear and convincing in support of this finding of the trial court. At

the same time, there is sufficient evidence to support it. Hamrick, an inspector at the election, testified: "I was an inspector of election in the Fourth ward precinct, and I inspected the ballots closely, and strung them after they were counted. I observed all the ballots very closely as I strung them. I saw no marks upon any of the ballots. I did not see any ballot marked as 'Defendant's Objection No. 3' is marked. I wore my glasses and I think I would have seen any ballot marked as this one is." Douglas, a ballot clerk, also testified: "I was a ballot clerk. I sat behind Mr. William Kettner while he was calling off the ballots. I did not see any such ballot as 'Defendant's Objection No. 3.' If there had been such a ballot, I think I would have seen it. I was representing the Republican party, and observed the ballots closely. I got up from my chair behind Mr. Kettner two or three times, and talked with Mr. Kelsey, but I do not think that I missed any of the tickets." This evidence is sufficient to support the finding of fact made by the trial court.

2. Plaintiff called one McCloud as a witness to prove that he voted for defendant, and that his vote was illegal, for the reason that he was not upon the day of election, nor had he been for thirty days previous thereto, a resident of the precinct in which he voted, but was in fact a resident of a precinct included in another supervisor district. The defendant objected, on the ground that the name of this witness did not appear on any list of illegal voters served by plaintiff on defendant. It appeared that his name was on the list of illegal voters served by defendant upon plaintiff. The court refused to allow plaintiff to examine this witness, and this ruling is assigned as error. It is claimed by appellant that section 1116 of the Code of Civil Procedure changes the rule existing prior thereto when it was required to set out the names claimed to be illegal voters, in the pleadings, without which evidence of their illegality could not be offered: Norwood v. Kenfield, 30 Cal. 394. The section referred to provides among other things: "But no testimony can be received of any illegal votes unless the party contesting such election deliver to the opposite party, at least three days before such trial, a written list of the number of illegal votes, and by whom given, which he intends to prove on such trial; and no testimony can be received of any illegal votes except such as are specified in such list." We think this statute should be held

to mean what it says, and that it should not be extended to mean something else. If plaintiff desired to give evidence of the illegality of any votes embraced in defendant's list, he should have included them in his own list. The object of the statute is to put the opposite party upon notice that he (the contestant) intends to claim these votes to be illegal. His proofs must relate to those only of which he has given the statutory notice. Defendant had the right to assume at the trial that plaintiff would not attack any votes except such as he had included in his list.

3. Appellant presents in the testimony of one Stingley the very interesting and important question as to whether the declarations of a voter after he has voted can be received to contradict his testimony as a witness as to how in fact he did vote. The court ruled that he was not a legal voter in the precinct where he voted, and that he "did not vote for any candidate for supervisor." He testified that he voted for the defendant. We do not feel called upon to consider this vote, for the reason that it is not claimed that it was cast for plaintiff, and the court refused to count it for defendant. If there was error, it was without prejudice to appellant.

4. The remaining error claimed by appellant is in the finding "that one George Phoebus voted at said election in the Third ward precinct, but said Phoebus was a legal voter therein at said time, and voted for the defendant for the office of supervisor." The only testimony as to this vote was given by Phoebus himself. He testified in part as follows: "Whenever I came into town, I had one certain place to go to. I went there whether I had money or not. I made that my home. That was the Noel place. . . . . I registered in the Third ward. . . . . I never voted anywhere else than in Visalia for eleven years. . . . . I never voted any place except in the Third ward in any years. . . . . I have been a wood-chopper for eleven years. . . . . When I was out of a job, I came back to Visalia, and went to Noel's to live. That has been my practice for over five years. . . . . I took contracts. At the present time I am cutting by the cord. . . . . I voted there (in the Third ward) because I considered I lived there. I intended to make Noel's my home. . . . . I have been sick at Noel's three different times. If I got sick in the country, I was always taken to Noel's. I considered it the only home I had." We think the evidence was sufficient to

justify the finding of the court as to this voter. He belongs to a class of persons whose place of residence must be deemed to be in the city, town or village where they choose in good faith to establish it. Because this voter has not a home, such as wife and children can give, he should not be deprived of rights of the highest value to the citizen. The judgment is affirmed.