MARY M. POWER, petitioner,

v.

HENRY POWER.

[Filed January 5th, 1904, as of October 19th, 1903.]

1. Where a husband and wife separated and lived apart in pursuance of a written agreement for separation, the wife was not entitled to a divorce for the husband's alleged desertion during such separation.

2. Where a wife was denied a divorce on her application by reason of the fact that her husband's alleged desertion was in pursuance of a written agreement for separation, such denial did not preclude the court from entering a decree relating to the custody of the children, which the wife demanded as a part of the relief prayed in her bill.

3. Where, in a suit for divorce, the husband answered the bill, and made no objection on the ground that it was multifarious, the wife was not subsequently entitled, on the court's denying her a divorce, to object to an order affecting the custody of the children, on the ground that the bill, in so far as it purported to give the court jurisdiction of the children, was multifarious.

4. It is not necessary, in an action for divorce, to entitle the court to award the custody of the children of the parties, that such children should be brought personally into court by writ of *habeas corpus* or otherwise.

5. Where a separation agreement between a husband and wife, residing in New Jersey, provided that the wife should have the custody of a child until he should arrive at the age of seven years, and until such time as the instrument should be altered, and, if an agreement for alteration could not be made, the parties would answer in any court having jurisdiction on any issue relating to the future control of such child, and the wife thereafter took the child into another state, and there resided until she voluntarily brought suit in New Jersey for a divorce, in which she prayed to be adjudged the custody of the child, the child's domicile in New Jersey was not changed, and the court had jurisdiction to award its custody to the husband on its appearing that such disposition would be for the child's benefit.

On counter petition of defendant for custody of an infant.

*Mr. Richard V. Lindabury* and *Mr. William R. Barricklo,* for the wife, petitioner.

*Mr. Charles E. Hendrickson, Jr.,* and *Mr. Joseph H. Adams,* for the husband, defendant.

PITNEY, V. C. (orally).

I think this case should be disposed of at once. It comes before the court in a peculiar manner, and it is better that I should state it over again, so that there shall be no mistake about it.

The wife, Mrs. Power, filed a petition in this court on the 8th of November, 1902, against her husband, praying for divorce on the ground of desertion for two years—alleging the desertion to have taken place in the fall of the year 1899. She therein states that she has two children, giving their ages. The first one was born on the 15th of May, 1894, and is consequently now nine years old. The prayer is this:

"Your petitioner therefore prays that she may be divorced from her said husband, the said defendant, and have the custody of said John Alsop Power (that is the oldest boy) and Alan Merewether Power (that is the youngest child) * * * and for other relief."

The defendant answered and denied the desertion, and set up a contract of separation, made on the 15th of November, 1899.

At the hearing, desiring to have affirmative relief with regard to one of the children, he filed a counter petition, praying for the custody of John Alsop Power, the oldest boy.

That petition was served on the day of the hearing, and the counsel for the wife said he did not care for any order to show cause to be made on it, but would waive those formalities and appear to it. An order to show cause was, I believe, made returnable to-day.

Proofs were taken both as to the desertion and as to the custody of the children. At the end of the proofs the court heard counsel and denied the prayer of the petitioner, the wife, for decree on the ground of desertion, and so far as the wife's petition for the custody of the children went it denied that on the merits.

I intimated a strong opinion that I thought the boy could go with his father, but did not utter a final opinion, and laid the matter over until to-day to enable the wife to be heard in answer to this counter petition.

That came on to-day, and counsel for the wife expressed no desire to add any further evidence, but made a written protest, supported by a powerful argument, against the jurisdiction of the court to determine this question at all, on the ground that the infant child whose custody is sought by the husband is not a domiciled resident of the State of New Jersey. That is the foundation of the protest, and as ancillary to that position the ground is taken that the petition of the wife for divorce and the custody of the children does not give this court jurisdiction to hear the counter petition of the husband, because the one is not germane to the other, but are, in fact, separate matters. Now, at the hearing of the original cause it turned out that the parties were living separate by reason of an agreement of separation, which was entered into between them on the 15th of November, 1899.

There was no dispute but that that agreement had been entered into, and the court held distinctly that, upon the evidence,

it was entered into by the wife advisedly, with the aid of counsel; that no fraud was practiced on her, nor was anything of that kind set up. There was no contention, on behalf of the wife, that the agreement was not entered into by her with her eyes open and with the very best legal and friendly advice. I will merely say that much now, because I enlarged on it somewhat, if I recollect right, in my oral opinion delivered at that time.

Now, when we open that agreement we find this clause:

"That the party of the second part shall have the care, custody and control of the two infant children of the parties of the first and second part hereto, to wit, John Alsop Power, now in his sixth year, and Alan Merewether Power, now in his first year, until they shall respectively attain the age of seven years, or until such time as this instrument is altered in accordance with the following provisions: That when the said John Alsop Power shall have attained the age of seven years, or at any time thereafter, upon the request of either party, the parties hereto of the first and second parts (that is, the husband and wife) shall enter into a further agreement if possible, which said agreement shall be considered only as a modification or change of this special provision of this instrument, and which shall provide for the care, custody, control, maintenance and welfare of the said John Alsop Power from and after the execution of said new agreement. That if after reasonable consideration the said parties hereto are not then able to agree upon mutually satisfactory terms of such new agreement, then, and in that event the said parties shall respectively hold themselves at all times thereafter in readiness to answer any process of any court having jurisdiction which may issue at the suit of either of the said parties for the purpose of obtaining a decree providing for the future care, custody, control, maintenance and welfare of the said John Alsop Power."

And a like clause is inserted to apply when Alan Merewether Power, the youngest child, comes of age.

Then, in addition, it appeared that the parties were, before the date of that agreement, domiciled residents of the town of Montclair, in this state; that the father continued to be a domiciled resident of this state and of that town. It further appeared that the separation agreement contained the usual clause that the parties might live separate and apart, &c., which clause, of course, was instantly and perfectly fatal to the complainant's suit for divorce—and I expressed my surprise that it should have been brought—not why a petition might not have been filed .

to have the custody of the children settled, in pursuance of this very clause in this agreement, but because it was perfectly impossible for the petitioner to set up that the defendant, her husband, had deserted her when she had been living separate and apart by his consent, and he had been living separate and apart by her consent.

Now, the wife, taking advantage of this separation agreement, made her home in the city of New York, and took those children there, by the consent of her husband, and subject to the terms of this agreement, by which, as I interpret it, the husband did not lose control of his child, or any of them, but they were subject still to his control after a certain time.

After the time had elapsed with regard to John, the oldest one, the wife comes into this court and appeals to this court for the power to have that child awarded to her. Now, if that is not submitting to this court the question what should be done with that child, I don't understand what is; and I said at the hearing, and I am still of the opinion, notwithstanding what has been argued with so much power by Mr. Lindabury, that it was competent for this court, in the wife's suit, to have awarded to her the custody of that child, John Alsop Power, and refused her the decree for divorce. I see no incongruity whatever between the two results in such a case, where a husband and wife are living separately, for one of them to sue the other for divorce and also for the custody of the children, and to fail to get the divorce and to recover the children in that petition.

The claims are not incongruous, they do not render the bill or petition multifarious. But grant, now, the whole extent of the argument of my learned friend, that that petition was multifarious, yet the defendant, the husband, did not set it up, but answered it, and it does not lie in the mouth of this wife to say, "I must not be bound by my own petition, because I made it multifarious."

The husband came in and joined issue. He said, "I am ready to meet you on both issues, and I make the issue a double one," so to speak, "not only whether you shall have the boy—I will make it on the other side, I will ask for the positive relief that I am to have him; here is our contract."

Now, she has come here, and, in my judgment—I will repeat, there was no incongruity in the two claims, for suppose, as I say, that she had proven beyond all peradventure before me that this man was entirely unfit to have this child, that he was vicious, that he was altogether unfit to have that child—I cannot see why I should not have awarded her the custody of that child, to prevent this man from going and stealing it, or taking it, or taking any measures to attempt to get it from her by force, making her custody lawful and sanctioned by a decree of this court.

He might have deserted her for only a year, or a year and eight months, or twenty months, or twenty-three months, and she would have failed in her suit for divorce, but not necessarily failed in her suit to recover possession of the child. For it must be understood that it is altogether a mistake to suppose that the winning party in a suit for divorce is entitled to the child. Ordinarily and often they are. If a woman is an adulteress, this court will generally take the children away from her, but not always, not always. I have myself, in a divorce case, decreed that the infant child should remain with the adulterous mother and the father should support him until he arrived at such an age to be taken away from her; and so with the husband. I might adjudge a husband guilty of adultery, and still say that he was entitled to the custody of his infant child of a certain age. It all depends upon the circumstances; it is not the guilt or innocence of the parties which controls; it is the welfare of the child. That is the question that this court has to determine. So I entirely repudiate the notion that, necessarily or even naturally, as goes the main suit so goes the custody of the infants. That goes according to the welfare of the child; the other goes according to the strict rights of the parties.

But it is said here that this child is not domiciled in New Jersey, and that this is an appeal to the court of chancery sitting *parens patria,* and that the court of chancery has no business to bother its head about the welfare of children whose domicile is not in this state—and that is a very strong, and, under ordinary circumstances, perhaps a prevailing, argument. A great many cases have been cited that the counsel has not had time and

opportunity to bring into court and enable the court to examine them.

But I stop here and go a little outside of the line of my discussion to remark that my examination of the subject heretofore has led me to the conclusion that an erroneous notion of the practice and power of the court in these questions of the custody of infants has prevailed in this and other states. The notion has been that you could not adjudicate upon the custody of a child without having it brought into court by *habeas corpus,* just as you would adjudicate upon the liberty of a person; the old common law notion being that if a man is in jail the jailer must bring him into the actual presence of the court, by the writ of *habeas corpus,* before the court will pay any attention to him whatever. In other words, that the presence of the party before the judge is necessary in order to give the judge jurisdiction. Now, that is one of the strict rules of the common law of writ of *habeas corpus ad subjiciendum.* But I have made an examination of the authorities on that subject pretty carefully within a year, in conjunction with my brother Stevenson, and we have both concluded, after examining the authorities in England, that the original jurisdiction of the court of chancery over the custody of infants was not based on the presence of the infant in court by the use of the writ of *habeas corpus;* that it was not based on that at all, but on an application to the court, not by English bill and subpœna, but by petition to the chancellor as *parens patria,* in a summary manner to determine the custody of the infant between the parents or other persons claiming them, and that a writ of *habeas corpus* was entirely out of place in any such practice. That writ is, strictly speaking, applicable only to the case of actual confinement or physical restraint exercised by some public officer and the like. I do not say it may not be useful in some cases of infants, but it is not necessary to the jurisdiction of the court over infants that they should be present in court.

Lord Elden even went so far as to say—I don't follow him— I don't think he was quite accurate—but he went so far, by way of illustration, in one case as to say that if he was applied to as a magistrate to bring an infant before him on *habeas corpus*

he would not consider the question of the contending rights, he would not determine them, he would not act as *parens patria*— he would act as magistrate, and all he could do would be to relieve the infants from illegal restraint, which is all the office of the writ of *habeas corpus.* I am satisfied that there is generally no occasion for the use of the writ of *habeas corpus* in infant cases, and that its use in this and other states has led to the notion that there would be no jurisdiction unless you had the child in the judicial presence.

Now, I do not mean to say that this opinion determines the present question, but it does account for the trend of opinion— for the reasons that judges have given for their opinions, that they have no jurisdiction unless the child is within the presence of the court.

Now, I am unable to see—though I do not consider it necessary for the decision of this case to determine—I am unable to see why, if the question arises between the husband and wife over the custody of a child, if the party proceeded against occupying the position of defendant is served with process within a jurisdiction and a decree is made on the merits between those two, why that decree should not bind wherever it may be set up, under the same circumstances.

Bear in mind that all these decrees are temporary in their nature; none of them are permanent.

This court absolutely declines in such cases, so far as I am concerned—and I think I speak for everyone—to bind itself to the future. Show me changing circumstances and I will change the decree. Show me that the parent to whom the custody of the child has been committed for any reason ought not longer to have it, but that it should go to somebody else—to the other parent—and the order will be changed. It is common practice to insert in the decree "until the further order of the court."

Take the case which has given me a great deal of trouble, the *White Case.* There was a boy seven years old. Neither the father nor mother were fit to have it—both convicted of adultery, and both denied relief on that ground. But there was the mother—there were particular reasons, in that case, which

Power *v.* Power.

made her offence a little excusable, because, as I held, the husband denied her those marital rights to which she was entitled, and she was led away and fell in love with a boy and had sexual intercourse with him. There was not the least proof she had ever done it with anybody else. I gave her that child until he gets a little older—no longer.

So that, I repeat, these decrees are not final; they are necessarily temporary in their nature; and the question is what is *now* best, and I say I see no reason why another court should not respect the decision of this court.

But here the objection is taken, and the wife says: "I object to the jurisdiction of this court because the child is a domiciled resident of the State of New York; I do not want to submit myself to the jurisdiction of this court." But the difficulty is that she has submitted herself to the jurisdiction of this court by her petition for divorce.

And further than that comes in the question of actual domicile. Is this child domiciled in New York because the wife went to New York to live under this contract? The *prima facie* rule is that the domicile follows the husband. The husband, by this agreement, allowed his wife to make a new domicile, but did he allow her or agree that she should make a new domicile for those children? It seems to me not. It seems to me that, by the very terms of that agreement, he reserved his right over his children, and the wife agreed he should reserve his right over those children. He never did consent that the childrens' domicile should be that of his wife's.

Take, then, those two points together—the fact that the wife has come here and submitted herself to the jurisdiction of the court, asking for the custody of those children, and, so to speak, provoked the very counter petition which is filed here by the husband—that a counter petition is filed in that very suit which I think it is germane to. I disagree with my friend, Mr. Lindabury, that it is a different suit and that it was not proper for the husband to present it. I think, under the practice of New Jersey adopted in these cases, that it was perfectly germane to that petition of the wife for the husband to set up this counter

petition, so as to get affirmative relief against her negative relief. Without that he would only have got negative relief, but with that cross-petition he is entitled to affirmative relief. It is germane to the suit, just as germane and much more so as a cross-petition for divorce on the ground of adultery would be, and that has been held by all our courts, and I believe by the court of errors and appeals, but it has been held over and over again by the court of chancery that that is perfectly germane and may be entitled in the same suit. Then, when you come to take the terms of the separation agreement, and the fact that their original domicile—their matrimonal domicile—was in the State of New Jersey, and in my judgment that domicile of the child was not changed by going to New York, I shall assume the jurisdiction to decide the custody of this boy.

The defendant has not desired to put in any further evidence. I merely repeat what I said the other day, that I thought the interest of the boy would be advanced by giving him over to the custody of the father. There was elaborate evidence on that subject taken—where the father was living, and what his prospects were, and what attention the boy would get, as contradistinguished to the attention he would get in the city of New York, living in a crowded apartment-house or flat-house with his mother, she working somewhat for a living and having very little opportunity, however well meaning she may be, to give him that care which a boy nine years old needs. He is getting too big for his mother's management. I have not seen the boy, but I take that for granted. I am satisfied he will have a first-class home with his father and grandparents.

Now, with regard to access. Of course, I am very far from desiring to estrange these children from either of their parents, and the mother must have access; and it is very difficult now, I want to say, it is very difficult to define just how that part of the decree shall be worded so as to work well in practice and reasonable access be assured to her, but what the court wants it understood is, whatever is said in the decree, that the father and grandparents shall give and shall exert themselves to give that mother a fair opportunity to see that boy. They must do

Power *v.* Power.

it in good faith; they must not stand on little technicalities and put little obstructions in the way such as you cannot put your finger on. They must do it heartily. If they do not, they may hear from this court, and I do not want to be troubled with applications to enforce a decree which it is very difficult, as I said before, to express in precise terms. I hope I am dealing with people that are not going to stand on mere close technical descriptions in the decree. What I want is that they shall give that mother a fair chance to maintain and retain her affection for that child. That is of just as much importance for that child, so far as the case appears to me now, as it is that he shall be well cared for by his father and grandparents.

I will therefore advise a decree in favor of the counter petitioner in those terms.

There is just one thing that I ought to have said something about. The contract provides that at the end of seven years there shall be an attempt to agree on a new establishment. There is no proof here that any such attempt is made, but it is perfectly apparent from the whole case——

Mr. Adams—I beg pardon. That is in the record. We did make an attempt, and they refused.

The Court—I mean to say this: That whatever there may have been of proof about that it had passed out of my mind. It is perfectly apparent that such a preliminary attempt would be futile. The wife brings this suit for divorce. That is unfriendly of itself at once. And I think it is one of those things like the request of a board of directors to bring a suit against themselves, you know, that is denied before it is made. If they can agree now, they can do it. This decree will not prevent them from agreeing. The litigation was not started by the husband; it was started by the wife, and she came to the court first, a court of proper jurisdiction.