LOLITA MOLLRING, Appellant, v. HARRY E. MOLLRING,
Appellee.

**APPEAL AND ERROR:** Decisions Reviewable—Finality of Deter-
mination. The existence of final judgment or decree is juris-
dictional. He who asserts, on appeal, that his suit was dis-
missed without prejudice, admits that he has no right to review
on the merits.

**DISMISSAL AND NONSUIT:** Voluntary—Dismissal Without Prej-
udice—When Timely. The reception of substantive testimony
after full submission to the court *ipso facto* re-opens the case,
and re-establishes the right of plaintiff to dismiss without
prejudice at any time before resubmission. (Sec. 3764, Code,
1897.)

**APPEAL AND ERROR:** Harmless Error—Deprivation of Right to
Bring Non-Maintainable Action. Harmless error results from
depriving a litigant, by erroneous dismissal on the merits, of
the right to re-institute an action which could not be main-
tained.

**DIVORCE:** Custody of Children—Orders—Power to Make When Di-
vorce is Denied. A dismissed petition for divorce arms the
court with no power to make custodial orders in regard to chil-
dren, but such orders may be made (when the children are
within the jurisdiction of the court) on an unchallenged and
voluntarily litigated cross-petition which prays for such orders,
even though no divorce be granted. (See Sec. 3180, Code, 1897.)

**DIVORCE:** Jurisdiction—Scope. The inherent powers of the dis-
trict court are not exercisable when the court is sitting in
chancery on issues of divorce, unless such powers are expressly
or impliedly conferred by the statutes governing divorce pro-
ceedings; therefore, custodial orders in regard to children may
not be made when no basis therefor exists except a dismissed
petition for divorce.

**INFANTS:** Custody and Protection—Jurisdiction of Courts. In-
fants need not be brought personally into court in order to con-
fer jurisdiction to make custodial orders with reference to
them. It is sufficient that they be *within* the jurisdiction of the
court.

*Appeal from Pottawattamie District Court.*—THOMAS
ARTHUR, Judge.

MAY 13, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

THE appellant filed a petition to obtain a divorce. Is-
sue was joined upon this. Defendant also filed cross-peti-
tion, setting up that a court of competent jurisdiction in
Missouri had divorced him from this plaintiff. In the cross-
petition, he prayed that he be awarded the custody of the
minor child of the parties. At the close of all the evidence,
the plaintiff and appellant attempted to dismiss her divorce
suit without prejudice. The trial court declined to permit
this, holding that the dismissal came too late, because the
cause had been finally submitted. Thereupon, it dismissed
the petition of the plaintiff, and awarded the custody of
said child to the defendant. The plaintiff appeals.—*Af-
firmed.*

*John P. Organ,* for appellant.

*Tinley, Mitchell & Pryor,* for appellee.

SALINGER, J.—I. The appellant asks us to determine
whether her petition was rightfully dismissed upon the
merits. This we may do only if appellant presents a final
judgment for our action. She is in no posi-
tion to claim that there is a final judgment
dismissing her petition; for she urges that
we should reverse the trial court for hold-
ing that she had not dismissed her divorce
suit without prejudice. Now, her claim that she did so dis-
miss is, of necessity, a concession by her that the divorce
suit has not been finally determined. All will agree that, if
the claim that there was a dismissal without prejudice
should now be sustained, there would be no final judgment

1. APPEAL AND
ERROR: deci-
sions review-
able: finality
of determina-
tion.

here to review. The existence of final decree is jurisdictional, and whoever contends here that a suit was dismissed without prejudice, admits there is no right to review on the merits. One may not say to an appellate court in the same suit that there is and that there is not a final judgment. We held, in *Sloanaker v. Howerton,* 182 Iowa 487, that an appellant may not, in the same litigation, take the position that a reply states no facts sufficient to constitute a counterclaim, and also assert rights based upon a claim that such pleading is a counterclaim. And see *Kearney M. & E. Co. v. Union Pac. R. Co.,* 97 Iowa 719; *Touhey v. Cooney,* 183 Iowa 1023. Nor does it matter that elements vital to an estoppel *in pais* are lacking, or that the taking of the contradictory positions has worked no prejudice, or that this appellant was unsuccessful in her claim to the lower court that she had dismissed without prejudice. See the *Kearney* case, supra, and the following authorities, cited therein with approval: *Van Winkle v. Crowell,* 146 U. S. 42 (13 Sup. Ct. Rep. 18); *Lehman, Durr & Co. v. Van Winkle,* 92 Ala. 443 (8 So. 870); *Bulkley v. Morgan,* 46 Conn. 393; Bigelow on Estoppel (5th Ed.) 673; *Nield v. Burton,* 49 Mich. 53 (12 N. W. 906); *Terry v. Munger,* 121 N. Y. 161 (24 N. E. 272); Herman on Estoppel, Sections 1045, 1051.

II. But we do have for consideration whether it was error to hold that plaintiff had not dismissed without prejudice.

**2. DISMISSAL AND NONSUIT: voluntary: dismissal without prejudice: when timely.** The abstract recites an entry that the cause was submitted on a day stated. It discloses further that, at the time this entry was made, or immediately thereafter, the trial judge stated he had not yet made up his mind on the law with reference to awarding custody of the child; that he would not make a decision of the entire case now, because he desired to examine some authorities cited on that question; but that he was prepared to say

at this time what his views on the facts were. He then
proceeded to state, in effect, that plaintiff had failed to sus-
tain her petition, both in corroboration and because of the
residence of the parties. Later than this, and before entry
of final decree, the appellee asked permission to offer addi-
tional testimony on the question of custody, and it was or-
dered that such testimony should be heard. Thereupon,
each of the parties offered further testimony on that ques-
tion; and it was when this testimony was closed that coun-
sel for plaintiff attempted to dismiss the divorce suit with-
out prejudice, with the statement that he did this because
he had some question as to the sufficiency of the corrobora-
tion. We are of opinion that the dismissal was in time, and
that the court should have refrained from entering final
judgment on the divorce petition. Before plaintiff at-
tempted to dismiss without prejudice, the case had been
reopened, but, to be sure, for the avowed purpose of taking
testimony on the question of custody only. Notwithstand-
ing this limitation, it is manifest that, when both parties
adduced testimony on who should have the custody, it
must have been anticipated that such testimony might bear
on whether plaintiff was entitled to a divorce. In trying
out which of the parties was the proper custodian, a third
person might have testified that the defendant had been
guilty of adultery. This would have been relevant to wheth-
er he was a proper custodian, and, if put in without objec-
tion, would have been direct support of a claim which was
made a ground for seeking divorce. In one word the re-
opening of the case for taking this testimony was a suffi-
cient re-opening to avoid final submission, and it follows
that the application to dismiss without prejudice came in
time.

III. But we think the error in holding that the dis-
missal came too late and in entering final judgment was
without prejudice. The defendant had interposed a decree

showing that a court of competent jurisdiction had, on his application, divorced him from the plaintiff. The plaintiff made certain attacks upon this decree. Notwithstanding, the trial court held that such decree was valid and effective. An examination of the evidence persuades us that this is a correct conclusion. The parties tried out the validity of said decree. A rightful determination that the parties were already divorced established that fact for and against either of the parties in any future litigation between them in which the validity of this decree was material. *Smith v. Cretors,* 181 Iowa 189.

3. APPEAL AND ERROR: harmless error: deprivation of right to bring non-maintainable action.

The error of the trial court, then, deprived the plaintiff of nothing except prevailing in a subsequent suit for divorce brought by her. But since our affirmance of the validity of the earlier decree for divorce precludes any possibility of success should plaintiff again sue for divorce, the refusal to let her dismiss without prejudice did her no injury. It is not a prejudicial error to deprive a party of the right to institute suits that can by no possibility be successful.

IV. The cross-petition which asserted a decree of a court of competent jurisdiction divorcing the parties had a further provision awarding the custody of this child to this defendant. When this decree was entered, neither the plaintiff nor the child was within the jurisdiction of that court. So far as the award of custody is concerned, the decree is of no effect for want of jurisdiction. *Kline v. Kline,* 57 Iowa 386. Indeed, as we understand it, appellee concedes as much, and in his cross bill tenders the question of who is the proper custodian of this child as an open question; and his claim is that this question, too, was tried out, and that the evidence justifies the action of the trial court in awarding the custody to the de-

4. DIVORCE: custody of children: orders: power to make when divorce is denied.

fendant. And we are of opinion that the evidence sustains
the finding below.

V. But appellant says the trial court had no jurisdiction to award the custody, because no divorce was granted
to either party. She bottoms this claim upon the provisions of Section 3180 of the Code, that:

5. DIVORCE:              "When a divorce is decreed, the court
   jurisdiction:
   scope.        may make such order in relation to the children * * * as shall be right."

She paraphrases the words "when a divorce is decreed,
the court may make such orders," into a statute declaration
that such orders may be made only if a divorce is decreed.
The exact question at this point is whether,, where there is
a cross-petition asking affirmative relief as to custody, this
statute provision works that there is no jurisdiction to make
custodial orders if divorce is denied. This question might
well have been determined in *Garrett v. Garrett,* 114 Iowa
439, but it was not done; and a reversal in it ensued because it was held the evidence did not justify the order made.
Nor is this question resolved by other cases upon which
appellee relies. The thing decided in *Knoll v. Knoll,* 114 La.
703 (38 So. 523), and *Hoskins v. Hoskins,* (Ky.) 89 S. W.
478, is that the award of custody is justified by the evidence. So of *Luck v. Luck,* 92 Cal. 653 (28 Pac. 787),—in
which, moreover, it appears affirmatively that no question
of statute is involved. So in *Power v. Power,* 65 N. J. Eq.
93 (55 Atl. 111, 114). And in *Defee v. Defee,* (Tex.) 51 S.
W. 274, the statute expressly permits such order though divorce be denied. That is the situation in *Cornelius v. Cornelius,* 31 Ala. 479. In *Bryan v. Bryan,* 34 Ala. 516, it is
decided that the chancery court has jurisdiction over the
custody of minor children, independent of the statute. But
this still leaves open the question whether it has such jurisdiction despite statute. In effect, the case holds that custody may be awarded though no divorce be granted, pro-

vided no statute denies the right to make such order.

Now, in the last analysis, the position of appellee is that, notwithstanding this statute, the case is controlled by certain powers inherent in the chancery court, and the rule that, when equity once takes hold, it may go to the end, though in the end it award nothing but relief due at law. We think that neither of these control here. Certainly, the cases that we have analyzed do not sustain this claim of the appellee. We shall presently reach consideration of what place the inherent powers of a chancery court have in determining this case. For the present, it suffices to say that, no matter what inherent powers the chancellor has, it does not follow that he has them while entertaining divorce suits. That jurisdiction was originally exercised by the ecclesiastical court. Later, Parliament exercised it, as did the legislatures of the several states in this country. Power to grant divorces reached the courts through a relinquishment of legislative jurisdiction, accompanied by legislative grant upon condition. So, in determining a divorce suit, the chancellor acts strictly upon grant. That this is so is made clear by the cases that make divorce jurisdiction depend upon strict compliance with the statute that grants the power. See *Williamson v. Williamson*, 179 Iowa 489. So it has been held there is no jurisdiction unless the petition filed contains all that the law requires to be alleged therein. *United States v. Arredondo*, 31 U. S. 689, 691. If the petition fails to allege what the law requires, the defect is so fatal that it may not be waived by failure to object. *Pinkney v. Pinkney*, 4 G. Greene 324; *Lyster v. Lyster*, 1 Iowa 130; *Inskeep v. Inskeep*, 5 Iowa 204, 218, 219; *Blinn v. Blinn*, 113 Iowa 83. If there be a failure to aver the existence of some fact which the statute requires to be stated, there is a failure to have a jurisdictional fact appear on the face of the divorce petition; and it follows the court can take no valid step. *Pate v. Pate*, 6 Mo. App. 49. Require-

ments as to what the petition must allege are mandatory. 2 Bishop on Marriage, Divorce & Separation (Ed. of 1891), Sections 591, 592, 593. The jurisdiction in divorce is wholly statutory. That which the statute commands must be made to appear on the face of the proceedings. *Reeves v. Reeves,* 34 Leg. Int. 115 (Pa. 1877). The jurisdiction of chancery over suits for divorce rests entirely upon statute; and, if the bill in such cases does not show upon its face that it is within the provision of the statute, the plaintiff cannot have any decree, even though the defendant does not demur. *Jarvis v. Jarvis,* 3 Ed. Ch. (N. Y.) 462.

If, then, all there was in the case was a suit for divorce and a dismissal of the petition, there was no power in the divorce court to make custodial orders. And *Davis v. Davis,* 75 N. Y. 221, amounts to a holding that, when all that is present is a dismissed petition for divorce, there is no power to award the custody of children, and such power is not conferred by a statute which empowers the court to make orders "during the pendency of the cause or at its final hearing or afterward." But though the function of the district court, while entertaining a divorce suit, is thus limited, it does not follow that the *court* had no inherent power to deal with the custody of infants. The district court has the powers of the chancery courts. The chancery court has original jurisdiction over the custody of infants as *parens patriae.* See *Power v. Power,* 65 N. J. Eq. 93 (55 Atl. at 111, 114). And it was held in *Cowls v. Cowls,* 3 Gilman (Ill.) 435, that such statute as we have confers no new authority or jurisdiction upon the chancery court. Where the question is the right to the permanent custody of children, the chancellor may, by virtue of his inherent jurisdiction, as public guardian of infants, fix their status in habeas corpus proceeding. *Buckley v. Perrine,* 54 N. J. Eq. 285 (34 Atl. 1054). So, then, though the divorce court has no power to settle custody, if all there is is a dismissed petition for

divorce, it is still true that the district court of Iowa has other functions than determining divorce suits, and, as a district court, has inherent power to fix the permanent custody of infants.

The exact question remaining is this: Though the divorce court has no power to make a custodial order upon denying the divorce, did the district court, though it had general chancery powers, lack jurisdiction to settle the custody of this child, on a cross-petition, whose filing or contents were in no manner challenged, and which prayed that the defendant have such custody, and where the parties voluntarily litigated whether or not defendant, rather than the plaintiff, was entitled to such custody? In *Thomas v. Thomas*, 250 Ill. 354 (95 N. E. 345), the decision is bottomed primarily upon a ruling that a cross bill in a divorce suit that merely seeks the custody of children is improper pleading, because such matter can be raised by answer only. It is, therefore, held that the general rule that equity will proceed to give full relief, even if to do so involves establishing purely legal rights, has no application; and that, on dismissal of a bill for divorce, it was error to grant defendant custody of the child, as prayed in the cross bill. In manifest effect, this is but a decision that, where a cross bill must, as a matter of practice, be eliminated, and so nothing remains except a dismissed bill for divorce, a statute such as ours deprives the divorce court of the right to make custodial orders. But the cross-petition at bar may not so be disposed of, under our rules of practice. Whether its matter was proper matter for a cross-petition, whether the claim should have been made by answer rather than cross-petition, and whether the cross-petition tendered what might be entertained by the chancery court, is quite immaterial. The defendant did tender this cross-petition, and in it the issue of fact whether he or the plaintiff was the proper person to have the custody. The child was, at the time,

within the jurisdiction of the district court to whom such issue was presented. No objection to the forum was made. No transfer was asked. No claim was made that cross-petition was not the proper method of tendering this issue. This made a proper issue on cross-petition, unless the district court was literally without power to make the custodial order, in which case the failure to move for a transfer or to make objection is not material. But that is not the situation. To say that the district court of Iowa has no *power* to determine who shall have the custody of a child then within the state, is a use of the word "jurisdiction" which we hold, in *Taylor v. Independent School Dist.*, 181 Iowa 544, to be a loose one. It involves a confusion between the right to do a thing and the power to do it. It has been seen that the district court did have the inherent chancery power to deal with the custody of infants, and it could have entertained this very issue on an application in habeas corpus. The case, then, presents the familiar question of power to act where that power is lacking in one arm of the court, but is possessed by another arm. This differentiates it from cases like *McLachlan v. Incorporated Town of Gray*, 105 Iowa 259, which turn wholly on the fact that a motion to transfer would have been idle, because the matter being heard was one over which no arm of the court had any jurisdiction. The case is more like *Hogueland v. Arts*, 113 Iowa 634. In that case, a demurrer raised that, though the suit was in equity, the petition was, in fact, an ejectment bill, which the law court alone had power to entertain. We held that the point was not tenable, because there had been no motion to transfer from the equity to the law docket.

The question is not what the divorce court may or may not do, but how the challenge to jurisdiction now being made shall be dealt with, in view of the fact that the district court of Iowa is not merely a divorce court, but one that, on some side of the court, has ample power to say which of these

parties was the fitter to have the custody of this child at
this time.  We think the dispute is quite controlled by *In
re Receivership of Magner,* 173 Iowa 299.  We can per-
ceive no good reason why these suitors, who were contend-
ing before the district judge over which one was the fit
custodian of this child, should be denied a hearing on their
evidence and be driven away, when they could go before the
same judge again, make the same issue,—say, on habeas
corpus,—put in again their evidence, and be entitled to the
very decision the same judge had just declined to make.
We will not interfere merely because the court did not in-
dulge in the useless thing of declaring that it would not
pass upon a matter on which all the testimony the parties
had, had been submitted, in order that, when reapproached
by the parties, the same judge, having the same question to
settle, might then retake the same proof, and then entertain
the controversy.

And we think that our position is fully supported by
authority in other jurisdictions.  In *Horton v. Horton,* 75
Ark. 22 (86 S. W. 824), the exact question is passed upon.
It was claimed that there was no inherent power in the
chancery court to award custody after denying a decree of
divorce, but held, on the authority of Nelson on Marriage
and Divorce, Par. 979, that this did not destroy the power of
the court, but merely stated a limitation upon the inherent
powers of the chancery court.  And it is said: .

"While it looks beyond the authority of the chancery
court in divorce suits where no divorce is granted to award
the custody of the children, yet it cannot be questioned that
the chancellor of that court is invested with full power to
award custody of minor children for their best interests
on habeas corpus proceedings.  It seems idle to turn par-
ties out of court and invite them into the chancellor's cham-
bers for the same relief sought in court."

And it is held that, since the order could be made in

habeas corpus proceeding, "there is no reason why it should
not be made in the divorce case, when all the parties are
before it, instead of remitting the parties
to the other remedy." And it is not neces-
sary, in an action for divorce, to entitle the
court to award the custody of the children
of the parties, that such children should be
brought personally into court by writ of habeas corpus or
otherwise. *Power v. Power*, 65 N. J. Eq. 93 (55 Atl. 111).
In that case, the wife prayed a divorce and the custody of
a child. At the hearing, the husband, desiring to have af-
firmative relief with regard to one of the children, filed a
counter petition, praying for his custody; and counsel for
the wife appeared to it. Proof was taken as to both the
charge of desertion made by the wife, and on the custody of
the children. The court denied the prayer for divorce on
the ground of desertion, and denied her her prayer for the
custody of the children, but on the merits. The point was
made that the petition of the wife for divorce and custody
does not give the court jurisdiction to hear the counter pe-
tition of the husband, because they are, in fact, separate
matters, and one is not germane to the other. The court
says this cross-petition worked a submitting to the court of
the question what should be done with the children; that,
in the circumstances, the bill was not multifarious; but if
it is, the defendant husband did not set up the plea, but
answered, and it does not lie in the mouth of the wife to say
she must not be bound by her own petition because she made
it multifarious; that the husband came in and joined issue;
that thus he said, in effect, "I am ready to meet you on both
issues, and make the issue a double one, not only whether
you shall have the child, but whether I may be granted the
positive relief that I am to have him." And further said,
that the relief asked for and given the husband upon his
counter petition was due to the fact that the wife herself

6. INFANTS: cus-
tody and pro-
tection: juris-
diction of
courts.

provoked that very counter petition; that the counter petition is not a different suit, but germane to the wife's suit; that without it he would have gotten only negative relief, while that cross-petition entitles him to affirmative relief.

It is our opinion that the decree of the district court must stand—*Affirmed.*

PRESTON, C. J., LADD and EVANS, JJ., concur.